Williams, J.
 

 The sole question presented to this court is whether the Court of Appeals erred in overruling the motion to dismiss the appeal on the ground that the cause was not appealable.
 

 The jurisdiction of the Court of Appeals is fixed by Article IV, Section 6, of the Constitution of Ohio, and cannot be changed by statute.
 
 Cincinnati Polyclinic
 
 v.
 
 Balch,
 
 92 Ohio St., 415, 111 N. E., 159. By the terms of this constitutional provision the jurisdiction of that court on appeal from the Court of Common
 
 *530
 
 Pleas is expressly limited to “trial of chancery cases”.
 
 Wagner
 
 v.
 
 Armstrong,
 
 93 Ohio St., 443, 113 N. E., 397. This rule has been consistently followed in subsequent cases. It is also established in this state that the fundamental basis for determining appeal-ability is found in the issues made by pleadings and the relief prayed for therein.
 
 Hummer
 
 v.
 
 Parsons,
 
 111 Ohio St., 595, 146 N. E., 62;
 
 Wall
 
 v.
 
 Dayton Federation Co.,
 
 121 Ohio St., 334, 168 N. E., 847;
 
 J. P. Loomis Coal & Supply Co.
 
 v.
 
 Garchev,
 
 123 Ohio St., 316, 175 N. E., 456. It is therefore necessary to look to the pleadings and if it appears therefrom that the case is one in chancery it is appealable, otherwise not.
 

 The second amended petition of the cross-petitioner George A. Cheney is based on alleged written contract, the substance of which is set forth therein and a copy of which is attached thereto. The contract reads as follows: “For and in consideration of services rendered and to be rendered by George A. Cheney to and for me, in the suit, compromise and litigation of a certain claim for damages, which I have against Harry O. Greer.
 

 “Now therefore, I do hereby employ George A. Cheney as my attorney at law, to bring a suit or effect a settlement for, the damages which I have sustained by reason of personal injuries and property damage.
 

 “I also hereby agree to give unto said George A. Cheney, as his pay, an amount equal to fifty (50) per cent, of whatever amount is received by me in case of trial or settlement, of the above entitled cause of action; and I hereby assign unto said George A. Cheney, said 50 per cent, out of any moneys received by me, either by way of trial, or settlement. If however, nothing is recovered by way of suit, compromise or settlement of the above entitled claim then said George A. Cheney is to receive nothing for legal services rendered.”
 

 In addition to setting out the substance of the con
 
 *531
 
 tract, the pleading set forth that the answering defendant, George A. Cheney, was at all times mentioned an attorney at law duly authorized and admitted to practice law in all the courts of Ohio; that he at all times stood ready, able, and willing to complete his part of said contract of employment and so notified the plaintiff, Edward Ireland; that the plaintiff without any cause attempted to discharge the answering defendant; that thereafter plaintiff brought suit on his aforesaid claim through one E. M. Pries, attorney at law, and that by reason thereof plaintiff has breached and broken the contract with the answering defendant to his damage in the sum of one-half of whatever sum is recovered, to wit, $2,500. The pleading concludes with the following prayer: “Wherefore, this answering defendant prays that the court find that he has an interest in and a partial assignment of the cause of action prosecuted in the above entitled cause by the plaintiff against the defendant, Harry O. Greer, to the extent of two thousand five hundred dollars ($2500.00), the amount due on the percentage basis provided by the parties in their said contract; that this answering defendant be decreed an interest in and a lien upon the fund which the plaintiff may derive either by way of suit, compromise or settlement of the above captioned cause for the payment to this answering defendant of such compensation as may be fixed and found due him by the court under the terms of said written contract; that the plaintiff, Edward Ireland, or any one else acting on his behalf, be enjoined and restrained from drawing any money or funds which may be paid into this court in the above captioned cause in satisfaction of any judgment rendered therein from the clerk of this court until the rights of this answering defendant under the written contract set forth and described herein have been fully heard and determined by the court; that the funds now in the possession of the clerk of courts and which were paid
 
 *532
 
 to him in satisfaction of the judgment rendered in the above entitled cause, be declared held in trust for the benefit of this answering defendant and that he be decreed to be the owner thereof and entitled to have the same paid over to him forthwith, and for such other and further relief to which in equity and good conscience this court may find this answering defendant entitled.”
 

 The answer of the plaintiff, Edward Ireland, is as follows:
 

 “The plaintiff, Edward Ireland, for answer to the second amended cross petition of George A. Cheney, admits that said George A. Cheney is admitted to practice law in all of the courts of the state of Ohio.
 

 “He further admits that the plaintiff brought suit in this case against the defendant, Harry Greer, and that Edward M. Fries, an attorney at law of Bowling Green, Ohio, represented him; and he denies each and every other allegation in said second amended cross petition contained which is not herein expressly admitted to be true.
 

 “By way of further answer herein, this plaintiff says that he recovered a judgment against the defendant, Harry Greer, in this cause for the sum of five thousand ($5000.00) dollars and costs, and that the amount of said judgment has been paid to the clerk of this court.
 

 ‘
 
 ‘
 
 This plaintiff further says that in the afternoon of the twenty-fifth day of December, 1931, he was very severely injured in an automobile accident; that the alleged contract to which the said George A. Cheney refers in his second amended answer and cross petition was presented to this plaintiff on the twenty-seventh day of December, 1931, and that he signed his name to said alleged contract.
 

 “He further says that at the time he signed his name to that alleged contract he was suffering very severely from the injuries received in said automobile
 
 *533
 
 accident; that he had an elevated temperature; that it was difficult for him to breathe, and that he was suffering extreme pain, and that at the time said purported contract was executed he was not in a mental condition to transact any business, and that the alleged contract was entirely void and of no force and effect.
 

 “He further says that he has been informed, believes and alleges that before the time he signed said alleged contract certain opiates had been administered to him under the direction of the attending physician, to deaden the pain he was suffering. That this plaintiff is unable to state the nature of said opiates or the time at which they were administered.
 

 “Plaintiff further says that at the time he signed said alleged contract he did not know what it contained, and was not in such a mental condition as to be able to understand the meaning thereof, and that he is not bound thereby.
 

 “Wherefore, plaintiff prays that the second amended cross petition of the said George A. Cheney herein be dismissed, and that the plaintiff, Edward Ireland, recover his costs herein made under the proceedings on said cross petition; and for such further relief as he may be entitled to in the premises.”
 

 To the answer the following reply was filed by the cross-petitioner:
 

 “Now comes the defendant, George A. Cheney, and for his reply to the answer of Edward Ireland to the second amended answer and cross-petition says that he admits that Edward Ireland -brought suit in the above entitled cause of action against Harry O. Greer through one, Edward M. Pries, and admits that in said cause Edward Ireland recovered a judgment against Harry O. Greer in the sum of five thousand dollars and costs.
 

 “This answering defendant also admits that said judgment and costs have been paid to the clerk of courts of Wood county, Ohio.
 

 
 *534
 
 “This answering defendant also admits that Edward Ireland was injured in an automobile accident on the twenty-fifth day of December, A. D. 1931, and admits that the contract of employment referred to in this answering defendant’s second amended answer and cross-petition was signed by Edward Ireland on the twenty-seventh day of December, A. D. 1931.
 

 “This answering defendant further says ■ that he denies each and every, all and singular, the other allegations and averments set forth and contained in said answer of Edward Ireland not hereinbefore specifically admitted to be true.
 

 “Wherefore this answering defendant prays that the prayer of the answer of Edward Ireland be denied, and that this answering defendant have all and singular the relief prayed for in his second amended answer and cross-petition, and for all other and proper relief in the premises.”
 

 Before specifically discussing the pleadings involved herein, it is well to consider when a case is one in chancery. The terms “equity” and “chancery” are commonly used in the United States in the same sense, as will appear from the books; this usage, no doubt, is due to the fact that jurisdiction exercised in equity by our courts is assimilated to the equity or extraordinary jurisdiction of the court of chancery in England.
 
 Crowley, Admr.,
 
 v.
 
 Crowley,
 
 124 Ohio St., 454, 458, 179 N. E., 360. That this interchange of terms is existent in the jurisprudence of this state is attested by the following language from
 
 Wagner
 
 v.
 
 Armstrong, supra,
 
 “Appealable cases, therefore, must be such eases as are now recognized as equitable in their nature; and perhaps the better way to express it would be, cases that were recognized as equitable actions before the adoption of the code of civil procedure, for, while our code established under one grand division all actions, whether of an equitable or a legal nature, and called them civil actions, yet there was no attempt
 
 *535
 
 to change the nature of the remedy. * * * A chancery case is one in which, according to the usages and practices in courts of chancery prior to and at the time of the adoption of the code of civil procedure, remedies were awarded in accordance with the principles of equity and not in accordance with rules of law. * # * ippg terms ‘equity’ and ‘chancery’ are interchangeable and are constantly used as synonymous in all of our states as well as in England.”
 

 It is therefore necessary for us in passing to concern ourselves with an inquiry into the extent to which the seeking of relief bears upon the question of appeal-ability.
 

 Of course the mere fact that equitable relief is asked for is not in and of itself controlling, although that fact must be considered for what it may be worth. If the only relief sought is wholly and purely of an equitable nature as shown by the pleadings then as a matter of course the case is one in chancery. However in many cases the relief sought is mixed in variety. In that event it is necessary to look to the dominating objective of the action, and if the principal, primary and paramount purpose is relief in equity then the cause lies in chancery, even though other ancillary or incidental relief is sought.
 

 However, if a petition contains a prayer for a money judgment only and the allegations therein warrant it, and an answer is filed making an issue or issues on the right to recover such a judgment, then the general rule is that such an action is one at law and triable by a jury.
 
 Wall
 
 v.
 
 Dayton Federation Co., supra.
 
 And again where a money judgment is the main relief sought, the fact that as incidental and ancillary thereto the pleader seeks additional relief as for instance, the appointment of a receiver, an accounting, discovery, an injunction or general relief, the action does not thereby become one in chancery.
 
 Chapman
 
 v.
 
 Lee,
 
 45 Ohio St., 356, 13 N. E., 736;
 
 Lange
 
 v.
 
 Lange,
 
 69 Ohio
 
 *536
 
 St., 346, 69 N. E., 611;
 
 Fisher
 
 v.
 
 Bower,
 
 79 Ohio St., 248, 87 N. E., 256;
 
 Complete Building Show Co.
 
 v.
 
 Albertson,
 
 99 Ohio St., 11, 121 N. E., 817;
 
 Forest City Investment Co.
 
 v.
 
 Haas,
 
 110 Ohio St., 188, 143 N. E., 549;
 
 Wall
 
 v.
 
 Dayton Federation Co., supra.
 

 Some confusion is likely to result from an examination and comparison of these cases unless one has in mind the history of appellate procedure in this state.
 

 Before the adoption of the present constitutional provision fixing appellate jurisdiction, appeals were regulated by statute. It will be observed that some of the cases cited arose before the constitutional change and therefore a review of organic law dealing with appeals is a prerequisite to a full understanding of many of the earlier cases.
 

 The Constitution of 1802 created a Supreme Court and Courts of Common Pleas and provided that the Supreme Court should have appellate (as well as original) jurisdiction “both in common law and chancery, in such cases as shall be directed by law”. Ohio Constitution of 1802, Article III, Sections 1 and 2.
 

 By Article IV, Section 6, of the Ohio Constitution of 1851, the District Court was created and given “such appellate jurisdiction as may be provided by law” and by Section 12, of the Schedule incorporated in that document, it was provided that “district courts shall, in their respective counties, be the successors of the present supreme court”. To render this phraseology intelligible it must be borne in mind that reference to the “present supreme court”, meant two of the judges thereof on the circuit as distinguished from the Supreme Court in bank, which was the Supreme Court with all four judges sitting in session at the capitol in Columbus.
 
 Ohio, for the Use of Brown County,
 
 v.
 
 Kelley,
 
 25 Ohio St., 29, 32;
 
 Webster
 
 v.
 
 State,
 
 43 Ohio St., 696, 699, 4 N. E., 92. Under the Constitution of 1851, the Supreme Court, which succeeded the Supreme Court in bank, was made to con
 
 *537
 
 sist of five judges. Article IV, Section 2, Constitution of 1851.
 

 By the Act of March 23, 1852 (50 Ohio Laws, 93), appeals were provided for from “final judgments in civil cases at law, decrees in chancery” etc., from the Common Pleas Court and Superior Courts to the District Court. This act was amended April 12, 1858 (55 Ohio Laws, 82), so that appeals were allowed from the Court of Common Pleas to the District. Court from all final judgments, orders or decrees in civil actions in which the parties did not have the right to demand a trial by jury. 2 Swan & Critchfield’s Revised Statutes, 1157, Section V (694). This section was amended in 65 Ohio Laws, 211, but was not changed materially in so far as it related to appellate jurisdiction.
 

 October 9, 1883, the Constitution was amended and the Circuit Court made the successor to the District Court with “such appellate jurisdiction as may be provided by law.” February 7, 1885, the General Assembly passed a law which recited, “an appeal may be taken to the circuit court by a party or other person directly affected, from a judgment or final order in a civil action rendered by the common pleas court, and of which it had original jurisdiction, if the right to demand a jury therein did not exist.” 82 Ohio Laws, 32 (Section 5226, Revised Statutes; Section 12224, General Code). This provision remained in force until invalidated by the adoption of the present constitutional provision and was held unconstitutional in
 
 Wagner
 
 v.
 
 Armstrong, supra.
 

 Section 11379, General Code, contains the following language: “Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial be waived, or a reference be ordered as hereinafter provided.” This provision has been in force since the adoption of the code of civil procedure in 1853. 51
 
 *538
 
 Ohio Laws, 57, Section 263 (2 Swan & Critchfield, 1020; Section 5130, Revised Statutes).
 

 Under Sections 5130 and 5226, Revised Statutes, many cases of an equitable nature were not appealable for the reason that they were held to be actions for money only. The situation existing prior to the establishment of the constitutional jurisdiction of the Court of Appeals as it now exists is made plain in the case of
 
 Lange
 
 v.
 
 Lange, supra,
 
 in which it is held that statutory interpleader was not appealable under the then existing statutes. We quote therefrom: “The section requires that a cause to be so appealable must present three traits: it must be a civil action, it must be within the original jurisdiction of the court of common pleas, and the right to demand a jury upon the trial of the issues of fact in that court must not exist. Whether the third of these traits appears in the present case is the question with respect to which counsel differ. The determination of that question is not aided by the consideration that interpleader is equitable in its origin and nature. However uniformly it may appear that appealable actions are equitable, the legislature has not used appropriate terms to make all equitable actions appealable. While the constitutional requirement that the right of trial by jury shall remain inviolate has been effective to continue that right in all cases which were triable to a jury at the time of the adoption of the constitution, it has not prevented, nor was it intended to prevent, the extension of the right of trial by jury to cases which were not so triable at the time of the adoption of the constitution; and every case included in such extension of the right of trial by jury is thereby excluded from the category of cases appealable, however clearly it may appear that the rights of the parties depend upon the application of principles which are of equitable origin and nature. Actions for money only, founded upon the principles of contribution and subrogation, are examples of those
 
 *539
 
 which, are now included within the provisions of section 5130, Revised Statutes, that, ‘issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial be waived, or a reference be ordered as hereinafter provided.’ ”
 

 That case may be read with profit in comparison with
 
 Waters
 
 v.
 
 Corlett, Admx.,
 
 123 Ohio St., 632, 176 N. E., 565, in which an equitable interpleader was held appealable. Views similar to those in
 
 Lange
 
 v.
 
 Lange, supra,
 
 may be found in
 
 Willson Improvement Co.
 
 v.
 
 Malone,
 
 78 Ohio St., 232, 85 N. E., 51; and
 
 Webb, Recr.,
 
 v.
 
 Stasel, Recr.,
 
 80 Ohio St., 122, 88 N. E., 143.
 

 Many cases formerly not appealable because they were actions for money only and triable to a jury within the meaning of Sections 5130 and 5226, Revised Statutes, are now appealable because they are “chancery cases”.
 

 There is no doubt that actions involving subrogation may so involve equity that they are chancery cases and an appeal will now lie although the judgment as a rule is for the payment of money. In fact reference is made to equitable subrogation in
 
 Union Trust Co.
 
 v.
 
 Lessovitz,
 
 122 Ohio St., 406, 171 N. E., 849. .However, there may be cases in which the main relief sought is a money judgment and the element of subrogation is only incidental thereto.
 

 It seems, however, that contribution is of equitable cognizance although a money judgment is all that is necessary to afford the equality that equity yields in that kind of action.
 

 In the ease of
 
 J. P. Loomis Coal & Supply Co.
 
 v.
 
 Garchev, supra,
 
 an action to enjoin a continuing nuisance was held appealable although in addition to the injunction the plaintiff sought damages.
 

 It has been held in Ohio, before the code of civil procedure, that an action by the vendor for specific performance was equitable in its nature although it must
 
 *540
 
 necessarily result in a decree for the payment of money.
 
 Rees
 
 v.
 
 Smith,
 
 1 Ohio, 124, 130, 13 Am. Dec., 599. Moreover, it is generally held in the United States that the remedies of the vendor and vendee are mutual and either may have specific performance in equity.
 
 Portner
 
 v.
 
 Tanner,
 
 30 Wyo., 85, 216 P., 1069;
 
 Blank
 
 v.
 
 American International Corp.,
 
 264 Pa., 260, 107 A., 737;
 
 Hoover et al., Exrs.,
 
 v.
 
 Pontz,
 
 271 Pa., 285, 114 A., 522. But it was made plain in the opinion in
 
 Hull
 
 v.
 
 Bell Bros. & Co.,
 
 54 Ohio St., 228, 238, 43 N.E, 584, that if in a suit under a land contract, no obligation of the defendant remained unfulfilled but the payment of money, the case would not be appealable under Sections 5130 and 5226, Revised Statutes.
 

 Many authorities on the subject of what constitutes an equity case are collected in 66 Corpus Juris, 1206, Section 1069, and 27 Ruling Case Law, 613, Section 366. This doctrine followed to its logical conclusion would require the holding that under proper circumstances an action for specific performance brought by the vendor would be appealable under the present rule.
 

 It is impracticable to review all Ohio cases on the subject but an examination of them leads irrevocably to the view that the present test of a case to determine whether it is appealable exists in ascertaining whether the dominating relief sought is equitable in nature.
 

 It must be borne in mind that the pleadings in the instant case were filed in the same case in which judgment for damages was rendered and that the money sought to be reached and applied to attorney fees was paid into court in that case. A suit for a money judgment in the ordinary course of events would have taken the form of an original action for money only. No personal judgment was asked for by the cross-petitioner and none was rendered in fact, for the journal entry shows distribution of the $2,500 by the payment of the costs of the proceedings to the clerk of the court and the balance to cross-petitioner. It was provided in the contract of
 
 *541
 
 employment that a percentage of the recovery was assigned to the contracting attorney at law for fees. At the time the contract was entered into no recovery had been made. Counsel for defendant in error claims, however, that, as equity regards that as done which ought to be done, there was an equitable assignment following recovery. The evident and only purpose of the suit was to enforce a lien for attorney fees upon the fund in court, to assert ownership in one-half of the judgment by way of equitable assignment and to compel the clerk to pay the funds in his possession amounting to $2,500 to the cross-petitioner, George A. Cheney, to cover attorney fees. This relief was equitable in nature. The plaintiff claimed that due to facts alleged in his answer the contract of employment was not binding on him and that consequently he was not indebted to the cross-petitioner in any sum whatever. If an action is in truth in chancery the court may and should give full, adequate and complete relief to a litigant entitled thereto, and, if a money judgment is necessary to accomplish that end, such a judgment may be rendered. 1 Pomeroy’s Equity Jurisprudence (4th Ed.), 249, Sections 184, 186-188. Its rendition under such circumstances is merely incidental to the main relief awarded by the chancellor. In the instant case the necessity to determine what, if any, indebtedness existed under the alleged contract for attorney fees did not make the action other than one in chancery. This principle is sound and wholesome; otherwise every cause in which is involved the determination of the amount due and owing to a lienholder out of a fund in court awaiting distribution, would not be cognizable in equity but would require a jury trial for the determination of the amount to be disbursed to such a one claiming an interest in the fund.
 

 The case was appealable and, as there is no prejudi
 
 *542
 
 cial error apparent on the face of the record, the judgment will be affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Stephenson, Jones, Matthias and Day, JJ., concur.