## STROHM v MOLTER

Ohio Appeals, 1st Dist, Butler Co.

No. 769.   Decided Oct. 24, 1939

Oscar R. Leiser, Hamilton, and Walter S. Harlan, Hamilton, for appellants.

Sheperd & Condo, Hamilton, for appellees.

### OPINION

By ROSS, J.

Appeal on questions of law and fact from the Court of Common Pleas of Butler County, Ohio.

The plaintiffs in their petition alleged that the defendants owned and occupied a lot in the city of Hamilton, adjacent to that owned and occupied by the plaintiffs. That the plaintiffs had erected and had occupied a dwelling upon their lot many years prior to the time when the defendants erected their dwelling upon their lot. The plaintiffs then alleged that:

"Defendants have wrongfully and unlawfully interfered with the drainage on plaintiffs' lot, and have raised the level of defendants' lot by grading and filling thereon and have thereby caused the water from defendants' lot to be thrown or cast upon the lot of the plaintiffs."

It is further alleged that the water so precipitated upon plaintiffs' lot caused certain drainage and would continue to cause drainage. An injunction was prayed for.

The answer of the defendants was, in effect, a general denial coupled with an allegation that the natural drainage was from the defendants' lot over that of the plaintiffs'.

The evidence sustained this latter statement.

It developed that the plaintiffs and defendants owned adjacent lots fronting on the west side of Prytania Avenue in the city of Hamilton, that the natural drainage of such lots was in a

general direction from the southwest to northeast, that by the location of a terrace by the defendants, upon the defendants' lot, along the dividing line between the lots, the natural flow of water toward and upon the plaintiffs'. lot was very slightly affected.

. It is true that the evidence as to the original state of the lots was conflicting, there being some evidence that the defendants' lot was originally lower than that of the plaintiffs'.

The claim of the plaintiffs in their petition, that the defendants have interferred with the drainage on the plaintiffs' lot is not sustained by any evidence. The trial court evidently, and correctly, so found.

There is no allegation in the petition that the lot of the defendants was lower originally than that of the plaintiffs, or that by raising the defendants' lot, the natural flow of surface water upon the plaintiffs' property was increased, or unduly precipitated.

If not demurrable, the plaintiffs' petition was certainly open to a motion for it is extremely difficult to tell from the language used just what claim is made, other than the legal conclusion that the defendants "unlawfully interferred with the drainage on plaintiffs' lot".

The civil law prevails in Ohio, and the plaintiffs would be bound to accept the natural flow of surface water upon their premises. Butler v Peck, 16 Oh St 334; Tootle v Clifton, 22 Oh St 247; Crawford v Rambo, 44 Oh St 279; Mason v Commissioners of Fulton County, 80 Oh St 151; McKiernann v Grimm, et, 31 Oh Ap 213; Cincinnati, Hamilton & Dayton R. R. v. Conrad, 13 Decisions Reprint, 1035.

The terrace created by the defendants only affects the flow of surface water toward and upon a portion of the plaintiffs' lot and to a very minor degree. Certainly, the creation of the terrace did not constitute an unreasonable use of the premises by the defendants, nor a situation which the plaintiffs might not reasonably expect to occur when the premises were later occupied, taking into consideration the fact that both lots were in a city. There is respectable authority for applying the rule of "reasonable use" to urban lots, and where the rule is applied, if a use of premises in an urban locality is found to be what might be reasonably expected to exist, the restriction against "throw back" and over acceleration will be modified accordingly. See XIX O. L. R. 506.

The defendants in the instant case would have no right to in any way change a natural water course or to concentrate the surface water upon their premises into a small channel and precipitate such water upon adjacent premises.

In 27 R. C. L., pages 1151, 1152, and 1153, it is stated:

"* * * but even in the jurisdictions where the civil law rule obtains, the servitude which the owner of the higher adjoining land has upon the lower land for the discharge of surface water naturally flowing on the lower land from the dominant estate extends only to surface water arising from natural causes, such as rain and snow, and cannot be augmented or made more burdensome by the acts or industry of man. and it is the generally recognized rule both of the civil and the common law that a landowner cannot collect surface water into an artificial channel or volume, or precipitate it in greatly increased or unnatural quantities upon his neighbor, to the substantial injury of the latter."

And in **Mason v Commissioners of Fulton County**, supra, at page 159 of the opinion, the Court say:

"It is well settled under the rule of both the common and the civil law that surface water cannot be collected into a ditch and discharged upon the land of another, to his damage; but the landowner may, in the reasonable use of his land drain the water from it into its natural outlet, whether that be a watercourse or a natural drain-

age channel, and thus increase the volume and accelerate the flow of water of such watercourse or channel, without incurring liability for damages to owners of lower lands."

The action of the defendants in creating a terrace along the rear of their premises did little more than to cause the water on the rear of defendants' lot to reach the plaintiffs' lot on a smaller area and possibly in a different location than before this terrace was created.

A careful examination of the entire record causes us to consider that the grievances of the plaintiffs are not as great as would seem at first to appear and as the trial court found at least a portion of the drainage claimed may be directly traced to water collected on and dropped from the outbuildings of the plaintiffs. However, as the defendants have taken no appeal from the decree of the trial court ordering the plaintiffs and defendants to build a common drain at their mutual expense, it is our conclusion that the decree of the trial court should be modified only to the extent of deleting from such decree any compulsory requirement upon the plaintiffs to build a common drain and instead thereof that the plaintiffs be given the option to require the erection of such drain at the equal expense of the plaintiffs and defendants.

A decree may therefore be taken in the alternative, that at the election of the plaintiffs, a common drain shall be built at the equal expense of the plaintiffs and defendants, or that any equitable relief shall be denied the plaintiffs. In either case, the costs shall be equally divided between the parties.

HAMILTON, PJ. and MATTHEWS, J., concur.